IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CHARLES R. ADAMS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-2520 |
| | § | |
| LIEUTENANT BAILEY, et al., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Charles R. Adams, a state inmate proceeding *pro se*, filed this section 1983 lawsuit against prison officers Scott Bailey, William Johnston, and Joseph Watson for violations of his civil rights. Defendants filed a motion for summary judgment (Docket Entry No. 26), to which plaintiff filed a response (Docket Entry No. 33).

Based on consideration of the pleadings, the motion and response, the record, and the applicable law, the Court **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment, and **ORDERS** as follows.

**I. BACKGROUND AND CLAIMS**

Plaintiff claims that, on July 1, 2011, defendants Johnston and Bailey assaulted him in an unreasonable and excessive use of force, causing him physical injury. He states that defendants then denied him medical attention and were deliberately indifferent to his serious medical needs. Plaintiff further claims that the assault was in retaliation for his earlier

complaints that Johnston had threatened him, and that an ensuing disciplinary charge brought by Johnston was additional retaliation. Plaintiff seeks a declaratory judgment with an award of monetary and punitive damages.

In response, defendants assert that the use of force was necessary and carried out in a reasonable manner, that the medical records do not support plaintiff's claim that he sustained serious physical injuries requiring immediate medical care, that defendant Watson had no personal involvement in the events, and that they are entitled to qualified immunity and Eleventh Amendment immunity.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. A factual dispute will preclude a grant of summary judgment if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The trial court may not weigh the evidence or make credibility determinations. *Id.* Conclusory allegations, speculation, improbable inferences, or a mere scintilla of evidence, however, are insufficient to defeat a summary judgment motion. *See Michaels v. Avitech, Inc.*, 202 F.3d 746, 754–55 (5th Cir. 2000).

## III. ELEVENTH AMENDMENT IMMUNITY

Plaintiff's claims for monetary damages against defendants in their official capacity are barred by the Eleventh Amendment. *See Pennhurst State School and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Because a suit brought against a state official in his official capacity is, in reality, a suit asserted against the state itself, the suit is barred. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Howlett v. Rose*, 496 U.S. 356, 365–66 (1990). Accordingly, defendants' motion for summary judgment dismissal of plaintiff's claims for monetary damages against the defendants in their official capacities is **GRANTED**, and the claims are **DISMISSED WITH PREJUDICE**.

## IV. USE OF EXCESSIVE FORCE

The record and probative summary judgment evidence show two irreconcilable versions of the underlying use of force incident made the basis of plaintiff's claims.

Plaintiff states under penalty of perjury that, on July 1, 2011, defendants Johnston and Bailey restrained him with handcuffs, slammed him to the floor, and repeatedly banged his head into the floor. Plaintiff states that he had not resisted or disobeyed any orders. He states that he weighs 149 pounds, while Johnston and Bailey weighed at least 200 pounds each. (Docket Entry No. 33, pp. 8–12.)

In support of his motion for summary judgment, defendant Scott Bailey submitted an affidavit, in which he testifies as follows:

3

> I am employed by the Texas Department of Criminal Justice (TDCJ) as Correctional Officer V at the Huntsville Unit in Huntsville, Texas. Prior to that position, I was employed as Lieutenant at the Goree Unit in Huntsville, Texas. I have been employed by TDCJ for approximately fifteen years in total.
>
> On July 1, 2011[,] at approximately 11:00 PM, Sergeant Johnston went to the offender barbershop to place Offender Charles Adams, TDCJ No. 1247914 in pre-hearing detention for attempting to establish an inappropriate relationship with Officer Brooks. I was in the Lieutenant's Office, which is located across the hall from the barbershop. I heard a commotion in the hallway, so I stepped into the hall to assist. When I stepped into the hallway, I saw that Sgt. Johnston was attempting to place hand restraints on Offender Adams, but Offender Adams was resisting. I assisted Sgt. Johnston in placing Offender Adams on the floor in order to gain control of the situation. It was necessary to restrain Offender Adams in order to protect the safety of officers and the security of the Goree Unit. Offender Adams continued to resist orders and attempts by myself and Sgt. Johnston to calm and restrain him. When Offender Adams was secured in hand restraints on the floor, I called for additional staff and a video camera.
>
> Because the Use of Force occurred at night, there was no nurse available on the unit to conduct a Use of Force physical. The Goree Unit does not have a nurse on duty at night. Offender Adams said his left jaw and wrists were sore, so I took photographs of Offender Adams and informed him that he would be seen by medical staff when a nurse arrived the following morning. Offender Adams was seen by a nurse at approximately 6:00 AM on the following morning, July 2, 2011.
>
> At no time did I act with any retaliatory intent toward Offender Adams. At no time did I act with intent to injure Offender Adams. I did not witness Sergeant Johnston use any excessive or unnecessary force on Offender Adams. On July 1, 2011[,] I acted in the manner necessary to gain the compliance of Offender Adams, to protect staff, and to protect the security of the prison unit. At all times relevant to this suit, I performed all of my duties to the best of my abilities and with the good faith belief that my actions were reasonable and in accordance with the law.

(Docket Entry No. 26, Exhibit C.) Defendant William Johnston did not submit an affidavit in support of the motion for summary judgment.

Defendant Bailey's testimony above is directly contradicted by reports appearing in the records submitted by the parties on summary judgment. Relevant to this inquiry is the following Use of Force Report written by TDCJ Officer Sherlaunda L. Brooks and her statements appearing within that report:

> I Officer S. Brooks witnessed a major use of force on offender Adams, Charles #1247914. Sgt. Johnston walked over to the offender barber shop where offender Adam, Charles was located. Sgt. Johnston told the inmate to get his ass up and come in the hallway. The offender walked out the barber shop and asked Sgt. Johnston what he had done with body language of the arms. Sgt. Johnston gave the offender Adams, Charles no reply, but told the offender to get on the floor[.] Offender Adams, Charles was still questioning Sgt. Johnston while kneeling on the floor, however Sgt. Johnston grabbed the offender['s] arm and threw the offender onto the floor. Lt. Bailey arrived at the scene to help Sgt. Johnston place handcuffs on the offender. Adams, Charles remained asking the question what he had done. Sgt. Johnston then put his hand on offender Adams['] head and began to bang his head on the floor to stop resisting the inmate kept repeating he is not resisting. Shortly five or ten minutes a video camera and officers arrived, where I S. Brooks left the scene and went to the front by the control picket. I later went back to the incident where I could see offender Adams, Charles being lifted off the floor and asking why Sgt. Johnston had to bust his lip. I left from the scene again and went by the control picket to ask Officer Watson if he wanted me to open the door to 1 North, as the offender is walking down the hall to be escorted to 1 North he [*sic*] is talking in a high tone that Sgt. Johnston and Lt. Bailey only did this major use of force because they were caught trying to set Officer S. Brooks up. Sgt. Johnston was in the background of the camera telling offender Adams, Charles that he was a pussy as the offender was being escorted down stairs.

(Docket No. 26-2, p. 34.) Officer Brooks informed investigating officers that she tried on multiple occasions after the use of force incident to ask Bailey if she needed to fill out a witness statement, but was told by Bailey that she did not need to because she had not witnessed the incident. *Id.*, p. 54. Johnston told the investigators that Brooks had denied

witnessing the incident; Bailey reported that Brooks could not have witnessed the incident because she never left the office. *Id.*

A fact finding inquiry was conducted on July 13, 2011, but the inquiry "reached an impasse due to contradicting statements in which Lt. Scott Bailey and Sgt. William Johnston's versions of the use of force did not match those of Offender Charles Adams #1247914 and Officer Sherlaunda Brooks." *Id.* The investigator noted that plaintiff's physical injuries were not consistent with excessive force, but reported that, "Sgt. Johnston's account matches that of Lt. Bailey and Offender Evans, Offender Adams and Officer Brooks versions match supporting unjustified and excessive force." *Id.*, p. 14. It was recommended that polygraph tests be undertaken to help resolve the investigation; the subsequent polygraph results, however, were not dispositive. Johnston did not take the polygraph test because he was "in an excitable state" and would not agree that his participation was voluntarily. *Id.*, pp. 54–55.[1]

The use of force report was referred to the Office of the Inspector General for further investigation, with the following notation under "Investigation Request":

> Officer Brooks alleges that [an] unjustified, excessive use of force took place on Offender Adams. She alleges that she was excluded as a witness and not allowed to fill out a witness statement. Lt. Bailey and Sgt. Johnston both allege that Officer Brooks was not a witness to the use of force and that no unjustified or excessive force occurred. The Goree Unit Administration requests the assistance of the Office of the Inspector General to determine which

---

[1] The Court mentions the polygraph tests only as background information appearing in the record. The results of the tests, including Johnston's refusal to take the test, have not been utilized by the Court as probative summary judgment evidence.

allegation is truthful, due to the limitation of investigative tools and resources of the unit.

*Id.*, p. 5.

The well settled rule is that the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Hudson v. Macmillan*, 503 U.S. 1, 5 (1992). In the context of an allegation of the use of excessive force by a prison official, the core judicial inquiry is whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Id.* at 7. In determining whether the use of force by a prison officer was wanton and unnecessary, the court considers the extent of the injury suffered, the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officers, and any efforts made to temper the severity of a forceful response. *Id.*

The Supreme Court has recognized that the Eighth Amendment standard includes an "objective component." In considering a prisoner's claim, the court must ask if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation. *Id.* at 8; *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The objective component of the Eighth Amendment is "contextual." Whereas a conditions-of-confinement claim requires "extreme deprivations" to be cognizable, in the excessive force context, "[w]hen prison officials maliciously and sadistically use force to cause harm," the Eighth Amendment is violated "whether or not significant injury is evident." *Id.* at 9. "That is not to say that every

malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind." *Id.* at 9–10.

The record and probative evidence in this case raise a genuine issue of material fact preluding summary judgment as to whether Johnston and Bailey applied force to plaintiff "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *See id.* at 7. To support an excessive force claim, a prisoner must have suffered from the excessive force a more than *de minimis* physical injury, "but there is no categorical requirement that the physical injury be significant, serious, or more than minor." *Gomez v. Chandler*, 163 F.3d 921, 924 (5th Cir. 1999). In determining whether an injury caused by excessive force is more than *de minimis*, the courts look to the context in which that force was deployed. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). The amount of injury necessary to satisfy the requirement of "some injury" and establish a constitutional violation is directly related to the amount of force that is constitutionally permissible under the circumstances. *Id.* at 703–04.

If defendants Bailey and Johnston acted maliciously and sadistically to cause harm, plaintiff's complaints of physical injury and pain cannot, as a matter of law, be held *de minimis*, and a genuine issue of material fact exists as to the issue of physical injury. Plaintiff states that he was thrown down and his head repeatedly banged into the floor, which caused

8

him immediate pain and injury. This is sufficient to raise a genuine issue of material fact in context of his claim for use of excessive force.

Defendants' motion for summary judgment is **DENIED** as to plaintiff's claims for use of excessive force.

## V. DELIBERATE INDIFFERENCE

It is well established that a prison official's deliberate indifference to serious medical needs of prisoners can constitute unnecessary and wanton infliction of pain of the type proscribed by the Eighth Amendment and actionable under section 1983. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish the requisite deliberate indifference, a prisoner must show that the defendant was both aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and that he actually drew an inference that such potential for harm existed. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Harris v. Hermann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has held that the deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Under the subjective prong of this analysis, a prison official acts with deliberate indifference only if he knows that the inmate faced a substantial risk of serious bodily harm and he disregards that risk by failing to take reasonable measures to abate it. *Robert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006).

Plaintiff presents no probative summary judgment evidence that the defendants knew that plaintiff faced a substantial risk of serious bodily harm by not being provided medical

attention immediately following the use of force incident and that they disregarded that risk. The record shows that the use of force occurred at 11:00 P.M. and that the Goree Unit did not employ a night duty nurse. Plaintiff complained of pain and soreness, but did not show any obvious injuries that required immediate medical attention or treatment. (Docket Entry No. 26, Exhibits C, D.) Plaintiff was examined by the unit nurse at 6:00 A.M. the following morning. The nurse noted a few red marks on plaintiff's body, but determined that no treatment was needed. (Docket Entry No. 26-2, pp. 40, 48.)

Defendants are entitled to summary judgment dismissal of plaintiff's claims for deliberate indifference to his serious medical needs.

## VI. QUALIFIED IMMUNITY

State officials acting within the scope of their authority generally are shielded from civil liability by the doctrine of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects government employees against civil liability in their individual capacity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Wernicke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009). Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity if the conduct was objectively reasonable under the circumstances presented in the case. *Zarnow v. City of Wichita Falls*, 500 F.3d 401, 408 (5th Cir. 2007). Thus, the doctrine of qualified immunity

shields from civil liability "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine whether a state official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts engage in a two-prong inquiry. *Pearson v. Callahan*, 555 U.S. 223 (2009). Under the first prong, the court asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right that was "clearly established" at that time. *Id.*, at 231; *Scott v. Harris*, 550 U.S. 372, 377 (2007). The second prong of the analysis requires the court to ask whether qualified immunity is appropriate, notwithstanding an alleged violation, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007). The reviewing court may consider these prongs in any sequence. *Pearson*, 555 U.S. at 235.

The usual summary judgment burden of proof is altered in the case of a qualified immunity defense. *Gates v. Texas Dep't of Protective and Regulatory Servs.*, 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact

regarding the reasonableness of the official's conduct. *Id.*; *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present absolute proof, but must offer more than mere allegations).

If the defendant's actions violated a clearly established constitutional right, the court then asks whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action. *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004).

In the instant case, the Court has determined that a genuine issue of material fact exists as to whether defendants Johnston and Bailey violated plaintiff's Eighth Amendment rights. Under the summary judgment record before this Court, it cannot be said that their actions were objectively reasonable. The contours of the Eighth Amendment prohibition against use of excessive force is sufficiently clear such that a reasonable prison official would understand that throwing an inmate down and repeatedly banging his head into the floor, without just cause, violates that constitutional prohibition.

Accordingly, defendants fail to establish their entitlement to qualified immunity as a matter of law, and their motion for summary judgment based on qualified immunity is **DENIED**.

## VII.  RETALIATION

Plaintiff claims that two disciplinary convictions against him were pursued and obtained by Johnston and/or Bailey in retaliation for plaintiff's complaints to prison officials that Johnston had threatened him, and for his refusal to participate in the investigation of another officer. (Docket Entry No. 33, p. 19.) Although plaintiff cannot utilize section 1983 to challenge or set aside a prison disciplinary conviction, section 1983 can be used to argue that a disciplinary charge was pursued and obtained in retaliation.

The first disciplinary conviction was dismissed on a technical error, and did not result in any punishment or harm to plaintiff. The second disciplinary conviction charged plaintiff with an attempted assault of Johnston during the use of force incident. Plaintiff was found guilty of the charge and punished.

Prison officials may not retaliate against a prisoner for exercising his constitutional rights. *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986). To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his exercise of that right, (3) a retaliatory adverse act, and (4) causation. *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). To show retaliatory intent, the inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. *Id.* In addition, retaliation against a prisoner is actionable "only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights."

*Morris*, 449 F.3d at 686. This threshold requirement "is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials." *Id.*

A retaliation claim in context of a disciplinary conviction focuses not on the merits of the disciplinary proceeding but on the retaliatory "interference, asking only whether there has been an obstruction of the exercise of a constitutional right." *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The inquiry is whether there was retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary conviction. *Id.*

In the instant proceeding, plaintiff claims that the disciplinary conviction for an attempted assault of Johnston was pursued and obtained in retaliation for plaintiff's complaints that Johnston threatened him and because he refused to "snitch" on another officer at Johnston's request. (Docket Entry No. 33, pp. 8, 20.) Plaintiff asserts that both the actual assault itself and the ensuing disciplinary charge were retaliatory in motive.

In his response to the motion for summary judgment, plaintiff states under penalty of perjury that, on July 1, 2011, he told five prison officials that he feared for his physical safety due to threats from Johnston. (Docket Entry No. 33, p. 19.) He states that, five minutes before the assault, Johnston filed a disciplinary charge against plaintiff, which procedurally allowed Johnston to place plaintiff in restraints to move him to a disciplinary holdover cell. Plaintiff asserts that Johnston and Bailey timed the move such that it was immediately before

"count" and officers and inmates would be preoccupied and away from the barbershop where Johnston told plaintiff to go. *Id.*, pp. 8, 19–20. The assault on plaintiff by Johnston and Bailey occurred moments later, and the disciplinary charge for his attempted assault of Johnston followed shortly thereafter.

Given this chronology, the prison investigative reports and records, and Brooks's statements contained therein, plaintiff raises a genuine issue of material fact defeating summary judgment as to whether Johnston's and Bailey's actions and disciplinary charge were retaliatory in motive.

Defendants' motion for summary judgment is **DENIED** as to plaintiff's claims for retaliation.

## VIII.   DEFENDANT WATSON

Defendants contend in the motion for summary judgment that no viable section 1983 claim has been raised against Joseph Watson and that he should be dismissed as a defendant. In response, plaintiff alleges that two inmates had told him that Watson knew ahead of time that the use of force would take place; according to plaintiff, Watson is "guilty by association" because he failed to take steps to prevent the use of force.

Personal involvement in an alleged constitutional violation is an essential element in a section 1983 lawsuit. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Plaintiff presents no probative summary judgment evidence that Watson knew about the planned use of force and that he deliberately ignored any risk it presented to plaintiff's safety, or as to any

other personal involvement for purposes of a section 1983 claim against him. Plaintiff's claims against Watson are speculative and unsupported, and are **DISMISSED WITH PREJUDICE**.

## IX. CONCLUSION

The Court **ORDERS** as follows:

1. Defendants' motion for summary judgment (Docket Entry No. 26) is **GRANTED** as to plaintiff's claims for monetary damages against defendants in their official capacity, and those claims are **DISMISSED WITH PREJUDICE**.

2. Defendants' motion for summary judgment (Docket Entry No. 26) is **GRANTED** as to plaintiff's claims for deliberate indifference to his serious medical needs.

3. Defendants' motion for summary judgment (Docket Entry No. 26) is **GRANTED** as to defendant Joseph Watson, and Joseph Watson is **DISMISSED WITH PREJUDICE** as a defendant in this lawsuit.

4. Defendants' motion for summary judgment (Docket Entry No. 26) is **DENIED** as to their defense of qualified immunity.

5. Defendants' motion for summary judgment (Docket Entry No. 26) is **DENIED** as to plaintiff's claims for use of excessive force and retaliation.

6. The Court will enter a separate scheduling order setting this case for trial.

**THIS IS AN INTERLOCUTORY ORDER.**

Signed at Houston, Texas, on this the 12 day of March, 2014.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE